STARK (UNITED STATES v.). See Case No. 16,378.

STARKE (HEAD v.). See Case No. 6,293.

STARKE v. The NAPOLEON. See Cases Nos. 10,011–10,015.

STARKS (RICHMOND MANUF'G CO. v.). See Case No. 11,802.

## Case No. 13,308.

STARKWEATHER v. CLEVELAND INS. CO.

[2 Abb. (U. S.) 67; 4 N. B. R. 341 (Quarto, 110); 3 Chi. Leg. News. 77; 28 Leg. Int. 36; 10 Am. Law Reg. (N. S.) 333; 5 Am. Law Rev. 568.] [1]

District Court, N. D. Ohio. Nov., 1870.

INSURANCE—TRANSFER OF POLICY—RIGHTS OF ASSIGNEE IN BANKRUPTCY.

1. A clause in an insurance policy declaring that the policy shall be void if assigned without the consent of the company, does not apply to a transfer made under the bankrupt law, by a register in bankruptcy, to an assignee appointed for the insured.

[Cited in Union Ins. Co. v. Barwick, 36 Neb. 233, 54 N. W. 519; Hammel v. Queen's Ins. Co., 54 Wis. 77, 11 N. W. 349.]

2. An assignee in bankruptcy does not acquire the beneficial interest in the assets, but is merely clothed with the title and control as agent for the bankrupt and his creditors, and for the purpose of converting them into money and applying them towards the discharge of the debts. The statutory transfer to such assignee is not within the purpose or operation of a condition in a contract, restricting alienation of the beneficial interest.

Petition in proceedings in bankruptcy.

S. O. Griswold and S. Starkweather, for the petition.

Willey, Cary, & Terrell, opposed.

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission. 5 Am. Law Rev. 568, contains only a partial report.]

SHERMAN, District Judge. The petition states that on February 7, 1870, Newton Wells, on the petition of his creditors, was declared by default a bankrupt, and that the petitioner was thereupon duly appointed his assignee. That on July 25, 1868, the defendants issued to Newton Wells, the said bankrupt, a policy of insurance in the sum of fifteen hundred dollars on his house in Concord, Lake county, Ohio, for the period of three years from that date. That on May 8, 1870, and within the life of the policy, but after Wells was adjudicated a bankrupt and the assignee appointed, the premises were destroyed by fire.

The answer of the insurance company does not deny the loss, or the sufficiency of the proofs, but bases its defense on two clauses in the policy which read thus: "If the title to the property is transferred or changed, this policy shall be void." And secondly, "If, without the written consent of the company, this policy shall be assigned, it shall be void." The direct question presented the court for adjudication is this: Is the assignment of the register to the assignee both of the policy and of the property insured, a violation of these two covenants in the policy, and does it exonerate the company from liability? It is claimed by the petitioner that his assignment and transfer were not the voluntary acts of the bankrupt, but merely an assignment by operation of law, and that there is a broad distinction recognized by the authorities between the voluntary and the involuntary assignments and transfers of the policy and title. It is claimed by the defendants that a policy of insurance is a contract of personal indemnity, in no manner incident to the estate, nor running with it, and that the language of this policy is broader than the common and usual clauses against alienation, and includes in it any involuntary change or transfer of title.

It may be premised, that as the covenants in this policy are in restraint of alienation, and entail a forfeiture, they may be strictly construed. Though a contract voluntarily entered into by the parties, no other meaning should be given to the language used than a most rigid and literal interpretation permits. 15 Johns. 276; 2 Wils. 234. The clause against the assignment of the policy, and against the transfer and change of title, may be considered together. The rules that apply to either apply to both. These covenants are common to all insurance contracts. All policies have the same clause forbidding the assignment of the policy. The covenant against change or transfer of title in different policies varies somewhat in phraseology. In some policies the language used is, "sold or conveyed, in whole or in part;" in others, "shall not be alienated by sale or otherwise;" or, as in this. "the title shall not be changed or transferred." All these expressions are in substance the same. To sell and convey, to alienate, or transfer

the title, means an act whereby a thing is made another man's; an act whereby a change in the ownership of property is made from one person to another. And whether these words are used in the active or passive sense can make no difference in their construction. These covenants, therefore, on the part of the assured, are that he will not assign the policy, or in any manner change his title to, or the ownership of, the property insured. [I can find no decisions under the present bankrupt law bearing upon the case at bar. The question must, therefore, be decided upon principle and by the lights derived from decisions upon analogous questions.] [2]

It is not to be doubted that the petitioner, by virtue of the adjudication in bankruptcy, and his appointment as assignee, has the control of this policy and of the property therein insured. What rights and what title did he thereby acquire? Assignees, according to 1 Bouv. Law Dict. 132, are of two kinds: one in fact, and one in law. An assignee in fact is one to whom an assignment has been made in fact, by the party having the right to assign. An assignee in law is one in whom the law vests the right and control in the property. To the latter class an assignee in bankruptcy belongs. He is like an administrator, executor, or guardian, upon whom, when appointed by the proper authority, the law confers the right and power to control the property thus committed to his charge, paramount to all others. But it does not give to, or vest in him, the absolute ownership in his own right to the property. He is a mere trustee, accountable under the law to the cestui que trust. He holds the property assigned to him in trust—of all leases and policies, as well as other property. In leases with covenants against alienation without consent, &c., it has always been held that the leases pass to the assignee, and this is true of the bankrupt law. Nay, more; it has been held (2 Chit. 600), that in such case, the assent of the lessor to such assignment is to be presumed from the law itself. This doctrine is nothing but the simple enunciation of the principle laid down by Lord Ellenborough, in Copeland v. Stephens, 1 Barn. & Ald. 593. In substance, he declares that the assignee is a mere agent for the bankrupt and for his creditors. He says: "An assignment by the commissioners of bankruptcy is the execution of a statutory power given them for a particular purpose, namely, the payment of the bankrupt's debts. Nothing passes from them, for nothing ever vested in them. Whatever passes, passes by force of the statute, and for the purpose of effecting the object of the statute. * * * The object of the statute, and of the assignment, is the payment of the bankrupt's debts, and the assignee is trustee only for that purpose."

[2] [From 4 N. B. R. 341 (Quarto, 110).]

Again, in 9 Ves. 100, and 13 Ves. 186, the lord chancellor declares that assignees are not considered as having the same rights as purchasers for a valuable consideration, and that they are placed in the same class as personal representatives of intestates. Of course I need not quote authorities to show that Wells dying, this policy, notwithstanding its covenants, would pass to and vest in his administrator. From these cases the principle is clearly deduced, that an assignee in the case of involuntary bankruptcy is only a trustee, an agent, standing in the shoes of the bankrupt, with only power to do what the bankrupt ought to have done, namely, pay the debts out of his assets. By the provisions of the bankrupt law, the register makes the assignment, and not the bankrupt. The latter makes no paper and performs no act to divest him of the title. But the control of the property, merely and solely by the judgment of the court, is taken from him and vested in the assignee, who has merely the power to do what the general as well as the bankrupt law requires, namely, to appropriate the bankrupt's property to the payment of his debts. In other words, that the assignee is a mere agent of the debtor to use his property in the payment of his debts. It therefore follows from this, that the bankrupt remains as much interested in watching over and guarding the insured property after as before bankruptcy, and that the assignee does not acquire such an interest in the policy, nor in the insured property, as to work the forfeiture contemplated by the clauses in question. Phil. Ins. 107.

This conclusion will be further strengthened by a review of the cases upon the effect of an involuntary act of bankruptcy upon the breaches of covenant in insurance and other like contracts. Parsons, in his work on Contracts (volume 2, p. 451), says: "On general principles, that where property, insured against fire, is taken into the possession of the law, for the benefit of creditors, the insurance will remain valid, until the property is sold by the assignee." The case of Bragg v. New England Mut. Fire Ins. Co., 5 Fost. [N. H.] 289, was a suit brought on a policy which contained a clause that, "if the property shall in any way be alienated, the policy shall be void." The property was mortgaged at the time, and this fact communicated to the company. During the life of the policy, the mortgage was foreclosed, and the property sold. But the court said, "that the title that became vested in the mortgagee by the foreclosure, was brought about by the operation of the law. There was no act of conveyance or transfer, by the mortgagor or mortgagee. We cannot therefore regard the foreclosure and sale as an alienation."

In the case of Smith v. Putnam, 3 Pick. 220, there was a lease of a farm, with a covenant not to carry off any hay under a for-

feiture of ten dollars per ton. Hay was attached and carried off by the creditors of the lessee, and without his consent. In this suit for the forfeiture the court said "that the general principle to be deduced from all the cases was that covenants not to assign, transfer, &c., are broken only by a voluntary transfer by the lessee. That the removal of the hay, by sale or execution, was not a voluntary act of the lessee, and, therefore, no breach of the covenant." The leading case in England will be found in 8 Term R. 57. Suit was brought on a lease, which contained a covenant that the lessee "should not set over, assign, transfer, or in any way dispose of the lease, without the written consent of the lessor." The lessee confessed judgment, and upon execution issued thereon the lease was sold. Lord Kenyon said: "I adopt the distinction between these acts which the party does voluntarily, and those that pass in invitum. Judgment in contemplation of law, always passes in invitum, and, therefore, there is no breach." The same doctrine was held thirty years before, and will be found in 3 Wils. 234.

In the case of Wilkinson v. Wilkinson, 10 Eng. Ch. 258, a father by will gave his son the rents and profits of certain premises, with a proviso that if the son assigned or disposed of, or otherwise incumbered the property, he should forfeit the estate. The son afterwards became bankrupt. Sir W. Grant, in deciding the case, says: "Now courts of law have held that an assignment by operation of law, which bankruptcy is, is not an alienation within the meaning of a restraint against alienation."

Hilliard, in his work on Bankruptcy (page 141), sums up the law in these words: "Property may be limited or leased to be void or revert back in the event of bankruptcy, and if a lease to a trader contain such a proviso, the term does not pass to his assignee, but reverts back. But to prevent its passing, there must be an express proviso to that fact. The usual covenant or proviso not to let, assign, or transfer, without consent, &c., will not be sufficient. The commissioners may still assign the lease to the assignees, without such consent. and such consent is presumed by operation of law. The distinction, however, is taken in England, that unlike bankruptcy, which is an involuntary proceeding, insolvency, being a voluntary proceeding on the part of the debtor himself, is a breach of the covenant against assignment, and works a forfeiture."

On these authorities, it seems clear to me, that the clauses in this policy forbidding its assignment, and the change and transfer of the title to the property, have no more effect than similar words in leases. Both are contracts between two persons, with this difference, that leases are under seal, and therefore of a higher nature. The cases cited establish the doctrine that bankruptcy and judgments are involuntary, and do not avoid covenants against assignments and transfers, either in leases or policies of insurance.

In this case, the bankruptcy of Wells, the owner of the policy and the property, was involuntary. By operation of the law the policy and the property were taken out of his custody and control, and placed in the hands of the assignee, as the agent of the law, to sell the same and pay his debts. The entire interest in the property is sold under the law by the assignee. The loss provided for in this policy accrued while the property was in this condition. It was still in law Wells' property, but by operation of law, in the hands of the assignee for the sole purpose of selling and applying the proceeds for Wells' benefit.

Decree for petitioner.